UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UZOMA JOHNPAUL AJUGWE,**

     **Plaintiff,**

**v.**                                                    **Case No: 8:25-cv-982-MSS-AEP**

**KRISTI NOEM** *in her official capacity as*
*Secretary, U.S. Department of Homeland*
*Security***, and TODD LYONS***, in his*
*official capacity as Acting Director, U.S.*
*Immigration and Customs Enforcement***,**

     **Defendants.**

_____

## <u>ORDER</u>

**THIS CAUSE** comes before the Court for consideration of Plaintiff Uzoma Johnpaul Ajugwe's Motion for Preliminary Injunction, (Dkt. 10), and Defendants' opposition thereto. (Dkt. 15) Upon consideration of all relevant filings, case law, the arguments of counsel at a hearing held on May 2, 2025, and being otherwise fully advised, the Court **GRANTS** Plaintiff's Motion.

## I.    BACKGROUND

Plaintiff Ajugwe ("Plaintiff") is a graduate student pursuing a master's degree in environmental engineering at the University of South Florida ("USF") in Tampa, Florida. (Dkt. 1-1 at ¶ 5) USF invited Plaintiff, a citizen of Nigeria, to enroll as a graduate student under a fully funded Graduate Research Assistantship on November 8, 2022. (<u>Id.</u> at ¶ 19) USF assisted Plaintiff in obtaining a Form I-20, a "Certificate of

Eligibility for Nonimmigrant Student Status," which was issued on or about January 27, 2023. (Id. at ¶ 20) Plaintiff then filed a nonimmigrant visa application with the United States Department of State on or about February 15, 2023. (Id. at ¶ 21) The United States Embassy in Abuja, Nigeria, approved and issued Plaintiff's F-1 visa on February 24, 2023. (Id. at ¶¶ 22–23)

Plaintiff arrived at the Miami International Airport on April 18, 2023. (Id. at ¶ 24) United States Customs and Border Protection ("CBP") admitted Plaintiff to the United States and issued Plaintiff a Form I-94. (Id. at ¶ 25) The Form I-94 documented Plaintiff's authorized stay in the United States under the F-1 visa category for the duration of his F-1 nonimmigrant status, which would coincide with the duration of his studies. (Id.)

Plaintiff currently studies at USF and works as a graduate assistant. Top in his field of study, Plaintiff has also been admitted to the University of Texas at Austin's premier doctoral program in petroleum engineering for the Fall 2025 semester, and Plaintiff desires to pursue his Ph.D. in this program when his studies at USF conclude. (Id. at ¶¶ 11, 15)

With no prior notice from any federal agency, on April 8, 2025, Plaintiff received an email from the Designated School Official ("DSO") at USF, Marcia Taylor, informing him United States Immigration and Customs Enforcement ("ICE") terminated his Student and Exchange Visitor Information System ("SEVIS") status and his Form I-20. (Id. at ¶ 27; Dkt. 1-12) According to the email, the reason ICE terminated Plaintiff's SEVIS status was as follows: "Individual identified in criminal

records check and/or has had their VISA revoked. SEVIS record has been terminated." (Dkt. 1-12)

On April 18, 2025, Plaintiff filed this lawsuit against Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security ("DHS"), and Todd Lyons, in his official capacity as Acting Director of ICE (collectively, "Defendants"), alleging DHS unlawfully terminated his SEVIS status. (Dkt. 1 at ¶¶ 92–95, 98–100, 104–105, 108–110)

In Count I, Plaintiff alleged Defendants violated the Administrative Procedure Act ("APA") by terminating Plaintiff's SEVIS status without statutory or regulatory authority. (Id. at ¶¶ 90–95) In Count II, Plaintiff alleged that, because Defendants failed to articulate any legitimate facts forming the basis for their decision to terminate Plaintiff's SEVIS status, Defendants' actions were "arbitrary, capricious, an abuse of discretion, or otherwise not accordance with the law." 5 U.S.C. § 706(2)(A). (Id. at ¶¶ 96–100) In Count III, Plaintiff alleged Defendants violated the Due Process Clause of the Fifth Amendment to the United States Constitution by terminating Plaintiff's SEVIS status on improper grounds, without prior notice, and without providing Plaintiff an opportunity to respond. (Id. at ¶¶ 101–105) In Count IV, Plaintiff alleged Defendants violated the APA's procedural due process provision, 5 U.S.C. § 706(2)(B), by terminating Plaintiff's SEVIS status on improper grounds, without prior notice, and without providing Plaintiff an opportunity to respond. (Id. at ¶¶ 106–110)

Also on April 18, 2025, Plaintiff filed an Emergency Motion for a Temporary Restraining Order. (Dkt. 2) Plaintiff sought an order from this Court: requiring

3

Defendants to immediately reinstate Plaintiff's SEVIS status; enjoining Defendants from terminating Plaintiff's SEVIS status until the resolution of his prospective motion for preliminary injunction; enjoining Defendants from initiating, commencing, conducting, or executing any removal proceedings based upon the termination of his SEVIS status; waiving any bond requirement in Fed. R. Civ. P. 65(c); and setting an expedited briefing schedule on preliminary injunctive relief. (Id.) The Court held a hearing on Plaintiff's Motion for Temporary Restraining Order on April 18, 2025, after which the Court granted Plaintiff the requested Temporary Restraining Order. (Dkt. 7) On April 24, 2025, Defendants verified that Plaintiff's SEVIS status had been reinstated. (Dkt. 13)

On April 23, 2025, Plaintiff filed a Motion for Preliminary Injunction. (Dkt. 10) On April 28, 2025, Defendants filed a response in opposition to the Motion. (Dkt. 15) On May 2, 2025, the Court held a hearing at which the Court heard arguments of counsel for both Parties and testimony from Marcia Taylor and Plaintiff.

At the hearing, Defendants offered no evidence that Plaintiff's F-1 visa has, in fact, been revoked. Defendants offered no evidence or argument that Plaintiff has ever been convicted of committing any crime or violating any immigration law in the United States. Defendants did not produce any documentation of the purported criminal records check in which Plaintiff was allegedly identified. When asked to produce such documentation at the hearing, Defendants could not. Defendants' counsel stated she had requested this information but had not yet received a response.

Defendants did not bring any agency witnesses to testify.  Instead, Defendants'
counsel represented at the hearing that ICE, "through its counsel in open court" in
some other proceeding not in this District, and in a statement apparently not subject
to cross-examination, has announced the following:

> ICE *is developing* a policy that *will provide* a framework for
> SEVIS record terminations. Until such a policy is issued,
> the SEVIS records for plaintiff(s) in this case (and other
> similarly situated plaintiffs) will remain Active or shall be
> re-activated if not currently active and ICE will not modify
> the record solely based on the NCIC[1] finding that resulted
> in the recent SEVIS termination.

(Dkt. 17 at 2) (emphasis added) Defendants' counsel could provide no other
information related to Defendants' position or the forthcoming policy. Likewise,
Defendants' counsel expressly declined to provide any assurance, whether oral or in
the form of an affidavit or a legally binding document, that Plaintiff's SEVIS status
would not be terminated immediately upon the lifting of the Temporary Restraining
Order, if that were to occur.[2]

Defendants provided a document that Defendants' counsel understood to be
"the new policy." (Dkt. 17-1) The Court struck the document from the record and
declined to consider it as evidence of the purported new policy for three reasons. First,
Defendants could not identify the person from ICE who issued this statement, and

---

[1] The National Crime Information Center ("NCIC") is a criminal records database maintained by the Federal Bureau of Investigation. *National Crime Information Systems*, U.S. DEP'T OF JUSTICE, https://www.justice.gov/tribal/national-crime-information-systems (last accessed May 6, 2025).
[2] When asked, "Does the Government have any reliable assurance or documentation that the plaintiff's SEVIS status will not be terminated tomorrow if the TRO is lifted today?" Defendants' counsel replied, "I don't have anything for you on that one way or the other, Your Honor."

otherwise failed to authenticate the statement. Second, the document featured a banner in bold red text at the top and bottom of both of its pages that stated, "**FOUO – FOR INTERNAL SEVP USE ONLY**". (Id.) Third, at the end of the document was the following disclaimer:

> This Broadcast Message is not a substitute for applicable legal requirements, nor is it itself a rule or a final action by SEVP. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

(Id.) Finding this proceeding to fall within the listed categories of proceedings in which the document "may not be relied upon," the Court declined to consider its contents as substantive evidence of Defendants' position. Defendants offered no rejoinder to this decision. Nor could Defendants explain how the Court could reasonably rely on this document as evidence of anything.

The only witness offered by Defendants was a Marcia Taylor, USF's DSO. Defendants offered Ms. Taylor to attest, which she did, that Plaintiff's SEVIS status has, since the TRO was entered, been reinstated.

Plaintiff, for his part, presented unrebutted testimony through Ms. Taylor that if Plaintiff's SEVIS status is terminated, he may not work at USF as a graduate assistant. Ms. Taylor testified that if USF permitted Plaintiff to work and to receive the stipend related to his graduate assistantship even though his SEVIS status were terminated, USF would be allowing him to engage in illegal employment. Ms. Taylor testified USF would risk the revocation of its Student Exchange Visitor Program

6

("SEVP") certification by doing so. Ms. Taylor confirmed that if USF's SEVP certification were revoked, USF would lose its right to host any international students.

Plaintiff offered compelling testimony regarding the circumstances surrounding the unannounced termination of his SEVIS status, including the practical and emotional disruptions it caused, as well as the financial costs he incurred. Generally stated, Plaintiff was devastated and terrified. He was afraid to leave his apartment for fear of being detained with no recourse. He was advised, nonetheless, to go to a testing site to take an exam for which he had prepared for over five months. He complied. But as he sat for the exam, he feared that ICE would arrive onsite and detain him. He went to seek solace from one of his relatives who lives in Tampa, Florida, but she sent him away, afraid to be in association with someone whose nonimmigrant status was uncertain. Plaintiff feared he had lost his opportunity to attend the University of Texas at Austin Ph.D. program for petroleum engineering, which he testified is one of the highest ranked programs for the field in the world. Lastly, he testified he believed there is a risk of a similar event recurring in the future. Plaintiff noted he would not be able to afford to hire counsel to challenge any renewed termination of his SEVIS status.

## II.    LEGAL STANDARD

To obtain a preliminary injunction, the moving party must demonstrate "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." ACLU of Fla., Inc.

v. Miami-Dade Cnty. Sch. Bd., 557 F. 3d 1177, 1198 (11th Cir. 2009). With respect to the public interest, when the government is a party, the analysis of the balance of the hardships and the public interest merge. Nken v. Holder, 556 U.S. 418, 435 (2009).

## III.   DISCUSSION

The Court finds Plaintiff has satisfied his burden and is entitled to the requested preliminary injunction.

Congress authorized the creation of the SEVP to collect information from universities about noncitizens who have F-1 status or are applying for F-1 status. 8 U.S.C. § 1372(a)(1)(A). This program satisfies Congress's directive that the Executive Branch establish "an electronic means to monitor and verify[,]" *inter alia*, "the issuance of a visa to a foreign student or an exchange visitor program participant," and "the admission into the United States of the foreign student or exchange visitor program participant." Id. at § 1372(a)(3). Congress requires universities participating in foreign student or exchange programs to collect and provide information about their noncitizen students through SEVP. Id. at § 1372(c)-(d). Such information includes the noncitizen students' current academic status, including whether a student is maintaining status as a full-time student. Id. at § 1372(c)(1)(C). A university that fails to provide the information specified in the statute risks the revocation of the university's SEVP certification and the ability or authorization to enroll noncitizen students. Id. at § 1372(d)(2).

A noncitizen student maintains his or her F-1 nonimmigrant status if the student is pursuing a full course of study at an SEVP-certified university. 8 C.F.R. §

214.2(f)(5)(i). A student who fails to maintain a full course of study without the approval of the DSO fails to maintain status. See id. at § 214.2(f)(5)(iv); Jie Fang v. Dir. U.S. Immigr. & Customs Enf't, 935 F.3d 172, 175–76 (3d Cir. 2019). Additionally, a noncitizen with nonimmigrant status fails to maintain status if he engages in unauthorized employment, provides false information, or is convicted for a crime of violence "for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(e)-(g). A noncitizen who has failed to maintain his or her nonimmigrant status, or to comply with the conditions of that status, "is deportable." 8 U.S.C. § 1227(a)(1)(C)(i).

Importantly, the relevant portions of the Code of Federal Regulations distinguish the "maintenance" of nonimmigrant status, which is the noncitizen's responsibility and generally within his or her control, and the "termination" of nonimmigrant status, which the government may accomplish in certain enumerated circumstances. Generally, a noncitizen who maintains his or her nonimmigrant status and complies with the laws of the United States is not deportable. See 8 U.S.C. § 1227(a). However, even if a noncitizen maintains his status, his nonimmigrant status may be terminated when (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d); Jie Fang, 935 F.3d at 185 n.100; Rodriguez v. Noem et al., No. 25-cv-616,

2025 WL 1284722, at *5 (D. Conn. May 1, 2025). No other relevant provision of the Code grants the government the authority to "terminate" nonimmigrant status.

The effect of ICE's termination of a noncitizen student's SEVIS record is to cause him to fail to maintain his nonimmigrant status. SEVP-certified universities will not permit a noncitizen student to attend classes for credit, perform research, or engage in other on-campus work if the universities cannot comply with their statutory obligation to collect and record information about the student in SEVIS. Likewise, an SEVP-certified university cannot verify to SEVP, DHS, or ICE that a noncitizen student is maintaining a full course of study if the noncitizen does not have an active SEVIS record. A noncitizen student with a terminated SEVIS status, assuming it is not reinstated, will fall out of his compliance with the conditions of his F-1 visa because the university at which he is enrolled will not permit him to engage in the course of study that he was admitted to the United States to pursue. Even if they were to permit him to continue to engage in a full course of study, as far as ICE or DHS is concerned, the student's compliance with the conditions of his status is not verifiable because it would not be contained in a SEVIS record. Such a student will thereby violate his F-1 status and will become deportable.

### a. Likelihood of Success on the Merits

Plaintiff argued he is likely to succeed on the merits of his Complaint for two reasons. First, the termination of Plaintiff's SEVIS status violated the APA and the Due Process Clause of the United States Constitution because Defendants did not rely on the regulatory grounds for terminating nonimmigrant status identified in 8 C.F.R.

§ 214.1(d), which Plaintiff argued are the exclusive grounds for the termination of status. (Dkt. 10 at 5–6) Plaintiff argued Defendants' failure to articulate one of these grounds as the basis for the termination of Plaintiff's SEVIS record rendered the decision arbitrary and capricious and otherwise not in accordance with law. (Id. at 6) Second, Plaintiff argued the termination violated the Due Process Clause because Plaintiff did not receive notice of ICE's decision to terminate his SEVIS status or an opportunity to be heard on the matter. (Id. at 6–7)

Defendants responded that Plaintiff is not likely to succeed on the merits of his Complaint and raised several arguments in support of their position.

First, Defendants argued Plaintiff lacks any property or liberty interest in his SEVIS status that would support a due process claim. (Dkt. 15 at 8–9)

Second, Defendants asserted Plaintiff would have access to review procedures that would satisfy the Due Process Clause if his F-1 status were terminated. (Id. at 9–10) (citing 8 C.F.R. 214.2(f)(16)) For this reason, Defendants argued Plaintiff's due process claim fails. (Id. at 10) Defendants also argued at the hearing that these review procedures rendered the termination of Plaintiff's SEVIS status non-final agency action, which is not reviewable by this Court under the APA.

Third, Defendants argued SEVP's change of Plaintiff's information in SEVIS is not a final agency action because the change did not mark the consummation of any decision-making process. (Id. at 11) Defendants therefore argued this Court may not review the decision under the APA. (Id.)

Fourth, Defendants argued the regulatory grounds for the termination of status in 8 C.F.R. § 214.1(d) are not exclusive. (Id. at 12–13) Thus, Defendants contended the SEVIS termination was not necessarily arbitrary, capricious, or not in accordance with law. (Id.)

Finally, Defendants argued Plaintiff's APA claim fails because he challenges the accuracy of his SEVIS status, and to challenge the accuracy of a record, a plaintiff must proceed under the Privacy Act, not the APA. (Id. at 14–20) Defendants noted that if a claim falls within the domain of the Privacy Act, an exception to the APA's waiver of sovereign immunity is triggered. (Id.) The APA does not waive sovereign immunity if "any other statute . . . explicitly or impliedly forbids the relief sought." 5 U.S.C. § 702. Defendants maintained the Privacy Act impliedly forbids Plaintiff, a noncitizen and non-permanent resident, from obtaining the relief he seeks because the Privacy Act only permits suit by United States citizens and permanent residents.[3] (Id. at 19–20) Thus, Defendants argued Plaintiff's claim under the APA fails for lack of jurisdiction. (Id. at 20)

The Court finds Plaintiff is likely to succeed on the merits of Count II of the Complaint because Plaintiff is likely to establish that the termination of his SEVIS

---

[3] Defendants note that in the 2016 via a statutory note, Congress extended certain Privacy Act remedies to citizens of designated countries. 5 U.S.C. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282. Nigeria is not such a designated country. 82 Fed. Reg. 7860-61 (Jan. 23, 2017); 84 Fed. Reg. 3493-94 (Feb. 12, 2019).

record effectively terminated his F-1 status, and this termination was arbitrary and capricious and not in accordance with law.[4]

First, the Court considers Defendants' argument that the Privacy Act deprives this Court of jurisdiction to hear Plaintiff's APA claim. The APA's sovereign immunity waiver is subject to three limitations: (1) the plaintiff must seek relief other than money damages; (2) the plaintiff must have no other adequate remedy; and (3) the plaintiff's action must not be expressly or impliedly forbidden by any other statute. 5 U.S.C. §§ 702, 704. The Privacy Act permits an "individual" to seek judicial review of an agency's denial of his request that an agency amend a "record" pertaining to him. 5 U.S.C. § 552a(g). "Individual" means "citizen of the United States or an alien lawfully admitted for permanent residence." Id. at § 552a(a)(2). "Record" means "any item, collection, or grouping of information about an individual that is maintained by an agency." Id. at § 552a(a)(4).

The first limitation is satisfied because the Parties conceded Plaintiff only seeks injunctive relief in this action. The second limitation is satisfied because Plaintiff has no other adequate remedy. The Privacy Act does not create a cause of action for Plaintiff to seek judicial review of an agency's mishandling of a record about him. For a record to constitute a "record" under the Act, it must be a record "about an individual." Since Plaintiff is not an "individual" because he is not a United States citizen or lawfully admitted for permanent residence, Plaintiff's SEVIS record is not a

---

[4] Finding Plaintiff is likely to succeed on the merits of Count II, the Court need not address Defendants' arguments that Plaintiff's Due Process claim fails.

13

"record"; it is not a record "about an individual." Accordingly, the Privacy Act does not provide Plaintiff any remedy at all. See Doe v. Noem et al., No. 25-cv-1103, 2025 U.S. Dist. LEXIS 73572, at *13–14 (E.D. Cal. Apr. 17, 2025).

Finally, the third limitation is satisfied because the Privacy Act does not expressly or impliedly forbid Plaintiff's action. Indeed, it does not address actions by noncitizens like Plaintiff or actions about the status of records about noncitizens at all. Moreover, "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA." Alliance for Retired Ams. v. Bessent, --- F. Supp. 3d ----, No. 25-0313, 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025) (citing Dep't of Agr. Rural Dev. Rural Hous. Serv. v. Kirtz, 601 U.S. 42, 63 (2024); Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 216 (2012)). But even if the Court were to consider the Privacy Act to be the exclusive source of remedies related to the mishandling of records about individuals, Plaintiff's suit "asserts a grievance altogether different from the kind" the Privacy Act concerns. Patchak, 567 U.S. at 216.

The Privacy Act "gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." Doe v. Chao, 540 U.S. 614, 619 (2004). The Privacy Act is not "a vehicle for amending the judgments of federal officials or others as those judgments are reflected in records maintained by federal agencies." Kleiman v. Dep't of Energy, 956 F.2d 335, 337–38 (D.C. Cir. 1992)

(citations and internal quotations omitted) (alterations accepted). Plaintiff does not challenge the accuracy of the contents of his SEVIS record. He challenges Defendants' unilateral, unchecked decision to terminate his SEVIS status.

More specifically, Plaintiff's suit challenges ICE's attempt to render noncitizens with nonimmigrant status deportable by causing them to fail to maintain status. The suit falls outside of the Privacy Act's domain, and the Privacy Act does not deprive this Court of jurisdiction over Plaintiff's claims.

Next, the Court must find that ICE's termination of Plaintiff's SEVIS status was final agency action. An agency action is final when it satisfies two conditions: (1) the action must mark the consummation of the agency's decision-making process; and (2) the action must be one by which rights or obligations have been determined, or from which legal consequences will flow. Bennett v. Spear, 520 U.S. 154, 178 (1997).

Plaintiff will most assuredly be able to establish that the termination of Plaintiff's SEVIS record was final agency action. The termination of Plaintiff's SEVIS record marked the consummation of some agency decision-making process that certain noncitizen students' SEVIS records should be terminated. There is no process outlined in a statute or a regulation by which Plaintiff could appeal the termination of his SEVIS status. Defendants conceded this fact at the hearing.[5] Defendants nonetheless argued that Plaintiff would have access to review procedures if he lost his

---

[5] The Court asked, "So there is no meaningful way to reinstate the SEVIS status, that's a permanent decision that has no recourse; is that right?" Defendants' counsel replied, "That's . . . my understanding, Your Honor. Should the change in SEVIS ultimately lead [to] removal proceedings then there would be due process given in the immigration Court in the removal proceeding."

F-1 nonimmigrant status. (Dkt. 15 at 9–10) (citing 8 C.F.R. § 214.2(f)(16)) This argument is unavailing for two reasons.

First, Defendants conceded at the hearing and in their response that Plaintiff's SEVIS status and his nonimmigrant status are different things, and the review procedures in 8 C.F.R. § 214.2(f)(16) relate to a student's ability to request the reinstatement their F-1 status, not their SEVIS status.[6] Defendants did not contend that the termination of Plaintiff's SEVIS status, alone, triggered a right to review procedures related to the loss of nonimmigrant status.

Second, and more importantly, the Code of Federal Regulations does not require a noncitizen student to request reinstatement of their nonimmigrant status before seeking judicial review of their loss of status. Jie Fang, 935 F.3d at 182. Thus, a request for reinstatement is not a prerequisite to judicial review. Id. Moreover, § 214.2(f)(16)(i) grants United States Citizenship and Immigration Services ("USCIS") discretion to "consider granting" a student's request for reinstatement of his or her F-1 status. "If USCIS does not reinstate the student, the student may not appeal the decision." Id. at § 214.2(f)(16)(ii). Therefore, a student's right to request reinstatement,

---

[6] When Defendants' counsel began to present this argument to the Court, the Court asked, "But that's the F-1 status, that's not the SEVIS status; is that right?" Defendants' counsel replied, "That's my understanding, Your Honor." Defendants also appeared to concede this fact in their response, when they stated that "the review procedures available to Plaintiff (in the event the Plaintiff *had actually lost his lawful nonimmigrant F-1 status*) would allow him to seek reinstatement administratively from [USCIS]." (Dkt. 15 at 9) (emphasis added) With this language, Defendants distinguish Plaintiff's loss of SEVIS status, which indisputably occurred, from a loss of his F-1 status, which Defendants indicate did not "actually" occur.

which USCIS may deny in its sole discretion, does not afford the student a procedure for the review of the student's loss of status. See Jie Fang, 935 F.3d at 184–85.

Based on the foregoing, the agency action here likely satisfies the first condition.

As for the second condition, ICE's termination of the SEVIS status has a cascading effect. The action precluded USF from continuing to employ him as a graduate assistant. Plaintiff's graduate assistantship includes both a stipend and a tuition waiver, but he cannot maintain those financial benefits without working in his graduate assistant role. ICE's action rendered him ineligible for the financial aid that made his enrollment as an F-1 student possible to begin with. And although Ms. Taylor testified that USF permitted Plaintiff to continue to attend classes, the Court understood this testimony to mean that USF permitted Plaintiff to audit classes, not to attend classes for credit as an enrolled student. Thus, the termination of Plaintiff's SEVIS status immediately jeopardized Plaintiff's ability to maintain a full course of study, and therefore, his F-1 status.

Moreover, even if USF permitted Plaintiff to continue to work as a graduate assistant and to attend classes for credit, USF would not be able to verify to DHS or ICE through SEVIS that Plaintiff was complying with the conditions of his F-1 visa. Without an active SEVIS status, Plaintiff cannot prove that he is maintaining his F-1 nonimmigrant status as far as Defendants are concerned. Consequently, the termination of his SEVIS status would jeopardize Plaintiff's nonimmigrant status.

The series of circumstances resulting from the termination of Plaintiff's SEVIS status would cause Plaintiff to fail to maintain his F-1 status and render him deportable

17

under 8 U.S.C. § 1227(a)(1)(C)(i).[7] Thus, the termination of his SEVIS record had obvious legal and substantive consequences. The second condition is satisfied. Based on the foregoing, the termination of Plaintiff's SEVIS record was a final agency action, and the Court may review the action for unlawfulness under the APA.

The APA permits any person adversely affected by an agency's action to obtain judicial review of that action in federal court. 5 U.S.C. § 702; Gulf Restoration Network v. Jewell, 161 F. Supp. 3d 1119, 1125 (S.D. Ala. 2016). The APA directs that agency actions be held unlawful and set aside if they are arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

> Agency action is considered arbitrary or capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 911 (11th Cir. 2007) (citations omitted). An agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Here, the notation attached to the termination of Plaintiff's SEVIS record stated, "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record

---

[7] "Any alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 1258 of this title, or to comply with the conditions of any such status, is deportable." 8 U.S.C. § 1227(a)(1)(C)(i).

has been terminated." (Dkt. 1-12) At the time of the termination, Defendants provided no other information or explanation.

The notation does not satisfy Defendants' duty to articulate an explanation for its decision to terminate Plaintiff's SEVIS record. Defendants made no connection between any findings of fact and the decision in any administrative record made available to Plaintiff. The Parties agreed that Plaintiff's visa had not been revoked at the time the SEVIS record was terminated, and Defendants have not produced any evidence that Plaintiff was identified in a criminal records check. As previously noted, at the hearing, Defendants' counsel stated she did not know what the NCIC database contained regarding Plaintiff, if anything.

In short, Defendants have produced no competent evidence to support either assertion in the notation. Consequently, Plaintiff has discharged his burden to show that the decision was likely arbitrary and capricious.

The Court also finds Plaintiff will likely be able to prove that the termination of his SEVIS status was not in accordance with law because Defendants effectively terminated Plaintiff's F-1 status by means not authorized by the Code of Federal Regulations. Defendants argued they are permitted to consider grounds not enumerated in 8 C.F.R. § 214.1(d) as grounds for the termination of a person's nonimmigrant status. (Dkt. 15 at 12–13) The Court disagrees. Defendants provided no support for this broad assertion of regulatory authority, and the contention is incongruous with a reading of 8 C.F.R. § 214.1 that considers the whole text.

Finally, the Court notes that Defendants abruptly determined to reinstate the SEVIS status of all individuals affected by their initial, unpublished policy of terminating SEVIS statuses without notice. Defendants advised another policy is being crafted but provided no details about the purported new policy, such as whether it would be different from the initial one, whether it would be facially compliant with statutory or regulatory constraints on agency authority, or who is responsible for promulgating the new policy.

Based on the foregoing, the Court finds Plaintiff is likely to succeed on the allegation that Defendants' termination of his SEVIS status was arbitrary and capricious and otherwise not in accordance with law. 5 U.S.C. § 706(2). Because Plaintiff is likely to succeed on Count II of the Complaint, the other Counts need not be addressed at this time.

### b. Likelihood of Irreparable Harm

As relevant to Plaintiff's claims in Count II, Plaintiff argued the unlawful termination of his SEVIS status would cause him to fall out of F-1 compliance and be subject to deportation. (Dkt. 10 at 9) Plaintiff also argued the termination of his SEVIS record has disrupted his academic, research, and career goals, and a renewed termination would cause further disruption. (Id.) Finally, Plaintiff maintained that he reasonably fears detention and/or removal from the United States if his SEVIS record is terminated again. (Id.)

Defendants argued Plaintiff's claims of future harm are speculative, and that he fails to show the harm is impending. (Dkt. 15 at 21)

The Court finds Plaintiff has shown he is likely to suffer irreparable harm absent the entry of the requested preliminary injunction. Although Plaintiff's SEVIS record has been reinstated under an asserted reversal in ICE's policy, ICE purportedly promises only that it will not "modify" Plaintiff's SEVIS record "solely based on the NCIC finding that resulted in the recent SEVIS termination." (Dkt. 17 at 2) Defendants provided no assurances that they will not terminate Plaintiff's SEVIS record without notice. Importantly, also, Defendants' counsel could not identify the person from ICE who issued this statement, and the statement has not been verified. As noted, again, no competent evidence was offered in the hearing to this effect.

Plaintiff establishes an impending risk that Plaintiff's SEVIS record will be terminated again. The termination of his SEVIS record would jeopardize Plaintiff's education, research, financial stability, and career trajectories, including Plaintiff's opportunity to enroll and matriculate in the doctoral program at the University of Texas at Austin. Additionally, as explained *supra*, the termination of Plaintiff's SEVIS record would cause him to fail to maintain his F-1 status and render him deportable. Thus, the risk that Defendants could unlawfully terminate Plaintiff's SEVIS record creates a parallel risk of Plaintiff's unlawful detention and/or removal from the United States.

While, in this case, Plaintiff secured counsel in time to seek an injunction—the cost of which was significant—he testified that he would not likely have the financial ability to secure the relief he seeks here if his SEVIS record were terminated again. The Court notes that Plaintiff received no advance notice of the first termination of his

SEVIS status. Plaintiff only learned of the termination from USF's DSO. Had he not received or opened the email from the DSO and had he encountered ICE, he might have been detained for deportation without ever learning he was out of status. In the event Plaintiff were deported, whether the Court could enforce an order directing his return to the United States is unclear. The Court finds it is likely that, upon a second termination of Plaintiff's SEVIS status, Plaintiff would be detained and/or deported before he could challenge the asserted unlawfulness of Defendants' action.

Finally, the loss of educational and career opportunities in the interim cannot be remedied by monetary relief from Defendants.

The Court finds, therefore, that Plaintiff has successfully shown that absent the relief provided by a preliminary injunction, he is likely to suffer irreparable harm for which an award of monetary damages would be unavailable and/or insufficient.

### c. Balance of Hardships and Public Interests

Plaintiff argued that the proper application of the Constitution serves the public interest because it is in the public interest to prevent the violation of a party's constitutional rights. (Dkt. 10 at 10) Conversely, Plaintiff argued, neither the government nor the public has any legitimate interest in enforcing an unconstitutional action. (Id.)

Defendants argued that Plaintiff's conclusion that the equities tip toward Plaintiff assumes Plaintiff will prevail on his claims. (Dkt. 15 at 22)

Defendants have failed to articulate a basis for terminating Plaintiff's SEVIS record. Defendants have also failed to produce any statutory or regulatory

authorization for Defendants' internal termination of Plaintiff's F-1 status. Thus, importantly, Defendants have not demonstrated any legitimate interest in terminating Plaintiff's SEVIS record. The relief requested would preserve Plaintiff's ability to remain in the United States until this matter can be resolved on the merits. On balance, the equities favor Plaintiff at this stage of the proceedings.

Finally, Defendants offered no claim of harm that would befall them as a result of this preliminary injunction. Defendants merely requested the Court require "an appearance bond." (Dkt. 15 at 23) It is unclear how this request applies in a civil context where Plaintiff is the proponent of the litigation. The Court is satisfied Plaintiff will appear at any proceeding held in this matter, as he has done so far as directed. Therefore, the Court exercises its discretion to waive the bond requirement in Fed. R. Civ. P. 65(c). Baldree v. Cargill, Inc., 758 F. Supp. 704 (M.D. Fla. 1990), aff'd, 925 F.2d 1474 (11th Cir. 1991).

## IV.    CONCLUSION

Accordingly, it is hereby **ORDERED**:

1.   Plaintiff's Motion for Preliminary Injunction, (Dkt. 10), is **GRANTED**.

2.   Defendants Kristi Noem, in her official capacity as Secretary, U.S. Department of Homeland Security, and Todd Lyons, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement, are preliminary enjoined, until such later time as the Court may direct, as follows:

a.  Defendants shall maintain Plaintiff's F-1 student status in the Student and Exchange Visitor Information System ("SEVIS") and shall maintain Plaintiff's SEVIS status and record;

b.  Defendants shall not terminate Plaintiff's nonimmigrant status or Plaintiff's SEVIS status or record absent a valid ground as set forth in 8 C.F.R. § 214.1(d), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for Plaintiff;

c.  Defendants are prohibited from arresting, detaining, or transferring Plaintiff out of this Court's jurisdiction, or ordering Plaintiff's arrest, detention, or transfer out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiff's counsel, as well as affording him appropriate time to contest any such action;

d.  Defendants are prohibited from initiating removal proceedings against or deporting Plaintiff until the resolution of this case on the merits;

e.  Plaintiff shall be permitted to continue his educational pursuits and associated employment at USF and the University of Texas at Austin pending the resolution of this case; and

f.  Defendants are prohibited from taking any kind of reprisal or retaliation against USF or the University of Texas at Austin during

24

the pendency of the preliminary injunction on grounds that either school is permitting Plaintiff to continue in his educational pursuits and associated employment, as permitted by this Court in this Order.

3. The security required by Federal Rule of Civil Procedure 65(c) is waived.

4. Within fourteen (14) days of the date of this Order, the Parties are **DIRECTED** to file a joint case management report with proposed deadlines for filing motions for summary judgment, responses, and replies.

**DONE** and **ORDERED** in Tampa, Florida on this 12th day of May 2025.

**Copies to:**
Counsel of record

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE