**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UZOMA JOHNPAUL AJUGWE,**

     **Plaintiff,**

**v.**                                                    **Case No: 8:25-cv-982-MSS-AEP**

**KRISTI NOEM** *in her official capacity as*
*Secretary, U.S. Department of Homeland*
*Security*, **and TODD LYONS,** *in his*
*official capacity as Acting Director, U.S.*
*Immigration and Customs Enforcement*,

     **Defendants.**

_____

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendants' Motion

for Summary Judgment, (Dkt. 34), Plaintiff's Motion for Summary Judgment, (Dkt.

35), and the Parties' respective responses and replies thereto. (Dkts. 36, 37, 38, 39)

Upon consideration of all relevant filings, case law, and being otherwise fully advised,

the Court **DENIES** Defendants' Motion and **GRANTS** Plaintiff's Motion.

### I.     BACKGROUND[1]

Plaintiff Uzoma JohnPaul Ajugwe ("Plaintiff") was a graduate student pursuing

a master's degree in environmental engineering at the University of South Florida

("USF") in Tampa, Florida in April of 2025. (Dkt. 1-1 at ¶ 5) USF invited Plaintiff, a

---

[1] The Court restates the background from the Preliminary Injunction Order, with the inclusion of any additional facts presented in the Parties' competing Motions for Summary Judgment, (Dkts. 34, 35) and the Administrative Record. (Dkt. 33)

citizen of Nigeria, to enroll as a graduate student under a fully funded Graduate Research Assistantship on November 8, 2022. (Id. at ¶ 19) USF assisted Plaintiff in obtaining a Form I-20, a "Certificate of Eligibility for Nonimmigrant Student Status," which was issued on or about January 27, 2023. (Id. at ¶ 20) Plaintiff then filed a nonimmigrant visa application with the United States Department of State on or about February 15, 2023. (Id. at ¶ 21) The United States Embassy in Abuja, Nigeria, approved and issued Plaintiff's F-1 visa on February 24, 2023. (Id. at ¶¶ 22–23)

Plaintiff arrived at the Miami International Airport on April 18, 2023. (Id. at ¶ 24) United States Customs and Border Protection ("CBP") admitted Plaintiff to the United States and issued Plaintiff a Form I-94. (Id. at ¶ 25) The Form I-94 documented Plaintiff's authorized stay in the United States under the F-1 visa category for the duration of his F-1 nonimmigrant status, which would coincide with the duration of his studies. (Id.)

Plaintiff previously studied at USF and worked as a graduate assistant. (Dkt. 35 at 2) Top in his field of study, Plaintiff was admitted to the University of Texas at Austin's premier doctoral program in petroleum engineering for the Fall 2025 semester.  (Id.) Plaintiff chose to pursue his Ph.D. in this program and is now enrolled in the program as of August of 2025 under a fully funded work study program. (Dkt. 36 at 2)

With no prior notice from any federal agency, on April 8, 2025, Plaintiff received an email from the Designated School Official ("DSO") at USF, Marcia Taylor, informing him United States Immigration and Customs Enforcement ("ICE")

2

terminated his Student and Exchange Visitor Information System ("SEVIS") status and his Form I-20. (Dkt. 1-1 at ¶ 27; Dkt. 1-12) According to the email, the reason ICE terminated Plaintiff's SEVIS status was as follows: "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (Dkt. 1-12)

On April 17, 2025, Plaintiff filed this lawsuit against Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security ("DHS"), and Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE") (collectively, "Defendants"), alleging DHS unlawfully terminated his SEVIS status. (Dkt. 1 at ¶¶ 92–95, 98–100, 104–105, 108–110)

In Count I, Plaintiff alleged Defendants violated the Administrative Procedure Act ("APA") by terminating Plaintiff's SEVIS status without statutory or regulatory authority. (Id. at ¶¶ 90–95) In Count II, Plaintiff alleged that, because Defendants failed to articulate any legitimate facts forming the basis for their decision to terminate Plaintiff's SEVIS status, Defendants' actions were "arbitrary, capricious, an abuse of discretion, or otherwise not accordance with the law." 5 U.S.C. § 706(2)(A). (Id. at ¶¶ 96–100) In Count III, Plaintiff alleged Defendants violated the Due Process Clause of the Fifth Amendment to the United States Constitution by terminating Plaintiff's SEVIS status on improper grounds, without prior notice, and without providing Plaintiff an opportunity to respond. (Id. at ¶¶ 101–105) In Count IV, Plaintiff alleged Defendants violated the APA's procedural due process provision, 5 U.S.C. §

3

706(2)(B), by terminating Plaintiff's SEVIS status on improper grounds, without prior notice, and without providing Plaintiff an opportunity to respond. (Id. at ¶¶ 106–110)

Also on April 17, 2025, Plaintiff filed an Emergency Motion for a Temporary Restraining Order. (Dkt. 2) Plaintiff sought an order from this Court: requiring Defendants to immediately reinstate Plaintiff's SEVIS status; enjoining Defendants from terminating Plaintiff's SEVIS status until the resolution of his prospective motion for preliminary injunction; enjoining Defendants from initiating, commencing, conducting, or executing any removal proceedings based upon the termination of his SEVIS status; waiving any bond requirement in Fed. R. Civ. P. 65(c); and setting an expedited briefing schedule on preliminary injunctive relief. (Id.) The Court held a hearing on Plaintiff's Motion for Temporary Restraining Order on April 18, 2025, after which the Court granted Plaintiff the requested Temporary Restraining Order. (Dkt. 7) On April 24, 2025, Defendants verified that Plaintiff's SEVIS status had been reinstated. (Dkt. 13)

On April 23, 2025, Plaintiff filed a Motion for Preliminary Injunction. (Dkt. 10) On April 28, 2025, Defendants filed a response in opposition to the Motion. (Dkt. 15) On May 2, 2025, the Court held a hearing at which the Court heard arguments of counsel for both Parties and testimony from Marcia Taylor and Plaintiff.

At the hearing, Defendants offered no evidence that Plaintiff's F-1 visa had, in fact, been revoked. Defendants offered no evidence or argument that Plaintiff has ever been convicted of committing any crime or of violating any immigration laws in the United States. Defendants did not produce any documentation of the purported

criminal records check in which Plaintiff was allegedly identified according to the email from the DSO, Ms. Taylor. When asked to produce such documentation at the hearing, Defendants could not. Defendants' counsel stated she had requested this information but had not yet received a response.

Defendants did not bring any agency witnesses to testify. Instead, Defendants' counsel represented at the hearing that ICE, "through its counsel in open court" in some other proceeding not in this District, and in a statement apparently not subject to cross-examination, had announced the following:

> ICE *is developing* a policy that *will provide* a framework for SEVIS record terminations. Until such a policy is issued, the SEVIS records for plaintiff(s) in this case (and other similarly situated plaintiffs) will remain Active or shall be re-activated if not currently active and ICE will not modify the record solely based on the NCIC[2] finding that resulted in the recent SEVIS termination.

(Dkt. 17 at 2) (emphasis added) Defendants' counsel could provide no other information related to Defendants' position or the forthcoming policy. Likewise, Defendants' counsel expressly declined to provide any assurance, whether oral or in the form of an affidavit or a legally binding document, that Plaintiff's SEVIS status would not be terminated immediately upon the lifting of the Temporary Restraining Order, if that were to occur.[3]

---

[2] The National Crime Information Center ("NCIC") is a criminal records database maintained by the Federal Bureau of Investigation. *National Crime Information Systems*, U.S. DEP'T OF JUSTICE, https://www.justice.gov/tribal/national-crime-information-systems (last accessed May 6, 2025).

[3] When asked, "Does the Government have any reliable assurance or documentation that the plaintiff's SEVIS status will not be terminated tomorrow if the TRO is lifted today?" Defendants' counsel replied, "I don't have anything for you on that one way or the other, Your Honor."

Defendants provided a document that Defendants' counsel understood to be "the new policy." (Dkt. 17-1) The Court struck the document from the record and declined to consider it as evidence of the purported new policy for three reasons. First, Defendants could not identify the person from ICE who issued this statement and otherwise failed to authenticate the statement. Second, the document featured a banner in bold red text at the top and bottom of both of its pages that stated, "**FOUO – FOR INTERNAL SEVP USE ONLY**". (Id.) Third, at the end of the document was the following disclaimer:

> This Broadcast Message is not a substitute for applicable legal requirements, nor is it itself a rule or a final action by SEVP. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

(Id.) Finding this proceeding to fall within the listed categories of proceedings in which the document "may not be relied upon," the Court declined to consider its contents as substantive evidence of Defendants' position. Defendants offered no rejoinder to this decision. Nor could Defendants explain how the Court could reasonably rely on this document as evidence of anything.

The only witness offered by Defendants was a Marcia Taylor, USF's DSO. Defendants offered Ms. Taylor to attest, which she did, that Plaintiff's SEVIS status had, since the TRO was entered, been reinstated.

Plaintiff, for his part, presented unrebutted testimony through Ms. Taylor that if Plaintiff's SEVIS status were terminated, he could not work at USF as a graduate

assistant. Ms. Taylor testified that if USF permitted Plaintiff to work and to receive the stipend related to his graduate assistantship even though his SEVIS status were terminated, USF would be allowing him to engage in illegal employment. Ms. Taylor testified USF would risk the revocation of its Student Exchange Visitor Program ("SEVP") certification by doing so. Ms. Taylor confirmed that if USF's SEVP certification were revoked, USF would lose its right to host any international students.

Plaintiff offered compelling testimony regarding the circumstances surrounding the unannounced termination of his SEVIS status, including the practical and emotional disruptions it caused, as well as the financial costs he incurred. Generally stated, Plaintiff was devastated and terrified. He was afraid to leave his apartment for fear of being detained with no recourse. He was advised, nonetheless, to go to a testing site to take an exam for which he had prepared for over five months. He complied. But as he sat for the exam, he feared that ICE would arrive onsite and detain him. He went to seek solace from one of his relatives who lives in Tampa, Florida, but she sent him away, afraid to be in association with someone whose nonimmigrant status was uncertain. Plaintiff feared he had lost his opportunity to attend the University of Texas at Austin Ph.D. program for petroleum engineering, which he testified is one of the highest ranked programs for the field in the world. Lastly, he testified he believed there is a risk of a similar event recurring in the future. Plaintiff noted he would not be able to afford to hire counsel to challenge any renewed termination of his SEVIS status.

Accordingly, the Court granted Plaintiff's Motion for Preliminary Injunction on May 12, 2025 in a written Order. The Parties then indicated the intended course of

action was to file cross Motions for Summary Judgment. (Dkt. 25) Plaintiff and Defendants did so. (Dkts. 34, 35)

Defendants also filed the Certified Administrative Record, which includes an email from Homeland Security Investigations ("HSI") Assistant Director Andre Watson to Department of State ("DOS") Acting Principal Deputy Assistant Secretary Shane Myers titled "*SEVIS NCIC Hits – Letterhead Memo for Consideration,*" a letter from Watson to Myers titled "*Re: SEVIS NCIC Hits*" and an attached (99.89% redacted) spreadsheet,[4] and a chain of four emails to and from redacted HSI and DOS emails with an attached spreadsheet (similarly redacted). (Dkt. 33)

A review of the record indicates the agency action began with an email from Andre Watson to Shane Myers on Saturday, April 5 as part of what was dubbed the "Student Criminal Alien Initiative." (Dkt. 33-3) The email included a memo and a "HOTEL"[5] spreadsheet "with positive NCIC hits for 850+ foreign students" for Myers' review and "any action [he] deem[ed] appropriate." (Id.) On the following Monday, someone[6] from DOS indicated they ran the data from the April 5 spreadsheet against DOS systems and determined which of the students with NCIC hits had valid visas. (Dkt. 33-5) The email asked how to "prioritize revocations" of the visas for students with valid visas and requested that DHS terminate SEVIS status for those without valid visas. (Id.) Seven minutes later, the unnamed Chief of HSI National

---

[4] The spreadsheet includes 916 rows, 915 of which are redacted.
[5] The Court notes that if HOTEL is an acronym, Defendants have not informed the Court what the acronym stands for. If it is not an acronym, the Court is unaware of the meaning of the word in the context present here.
[6] When unnamed, the agency has redacted the identifying email information.

Security Division forwarded this list for F-1 terminations. Four minutes later, another unnamed HSI National Security Division Chief forwarded the list requesting SEVIS termination for both tabs. (Id.) Less than 26 hours later, the unnamed Section Chief of the Student and Employer Oversight Section of the Student and Exchange Visitor Program indicated "Request Hotel is completed." (Id.)

## II.    LEGAL STANDARD

Summary judgment is appropriate if there is no genuine disputed issue of material fact, and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a) and (c). However, when reviewing a final agency action under the Administrative Procedure Act ("APA"), the Rule 56 standard is not applicable because the "district judge sits as an appellate tribunal" and "the entire case on review is a question of law." Brinklys v. Johnson, 175 F. Supp. 3d 1338 (M.D. Fla. 2016), aff'd sub nom. Brinklys v. Sec., Dept. of Homeland Sec., 702 Fed. Appx. 856 (11th Cir. 2017) (quoting Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C.Cir.2001)). The role of the district court is "to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Sierra Club v. Mainella, 459 F.Supp.2d 76, 90 (D.D.C. 2006). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Id.

The APA directs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)-(D). Under the APA, judicial review is deferential and "and a court may not substitute its own policy judgment for that of the agency." FCC v. Prometheus Radio Project, 592 U.S. 414, 423 (2021). Nevertheless, "[j]udicial review under the APA does not relieve the agency of its obligation to develop an evidentiary basis for its findings;" it rather "reinforces this obligation." Philip Morris USA Inc. v. U.S. Food and Drug Administration, 801 F. Supp. 3d 1353, 1364 (S.D. Ga. 2025) (citing Motor Vehicle Mfrs. Ass'n of the U.S. Inc., v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); SEC v. Chenery Corp., 318 U.S. 80, 94 (1943)).

## III.   ANALYSIS

### a. The Court rejects Defendants' arguments that the Court cannot reach the merits of this case.

Defendants begin their request for summary judgment by realleging mootness arguments already raised and decided by the Court in the Oral Order Denying the Motion to Dismiss. (Dkt. 20) The crux of Defendants' argument is there is no longer a case or controversy to decide because Plaintiff's SEVIS status was reinstated. When this argument was asserted prior to the Preliminary Injunction Hearing, the Court found that the case was "quite likely to be repeated" and "decline[d] to find that the case [was] moot." Now, to supplement their previous argument, Defendants provide a declaration from Andre Watson, "a Senior Official within the National Security Division for Homeland Security Investigations responsible for the Student and Exchange Visitor Program (SEVP)." (Dkt. 34 at 6; Dkt. 34-2 [hereinafter "Watson

10

Decl."]) Defendants' proffer of this declaration does not suffice to alter the Court's previous ruling.

### i. Defendants' voluntary cessation does not moot this case, and this case continues to present a justiciable controversy.

Federal courts only have jurisdiction over "cases" and "controversies." U.S. Const. art. III, § 2. "A cause of action becomes moot 'when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" Djadju v. Vega, 32 F.4th 1102, 1106 (11th Cir. 2022)

"Voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." Walker v. City of Calhoun, GA, 901 F.3d 1245, 1270 (11th Cir. 2018) (alteration accepted) (citing Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs, 868 F.3d 1248, 1255 (11th Cir. 2017) (en banc)). A case is moot only "when the totality of the circumstances persuades the court that there is no reasonable expectation that the government entity will reenact the challenged policy." Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1268 (11th Cir. 2020).  To determine if the voluntary cessation exception to mootness applies, the Eleventh Circuit instructs the Court to examine three factors: "whether (i) the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate jurisdiction; (ii) the government's decision to terminate the challenged conduct was unambiguous, i.e., permanent and complete; and (iii) the government has consistently maintained its commitment to the new policy or legislative scheme." Djadju, 32 F.4th at 1109 (citing Walker, 901 F.3d at 1270).

All three factors weigh against finding the case is moot. To begin, Defendants do not provide a reason why the change occurred, just that it did.[7] Next, the decision to reactivate this Plaintiff's SEVIS status was in response to the Court's Temporary Restraining Order, and the current suggestion that ICE will not again spontaneously terminate students' SEVIS statuses is uncertain at best.

Mr. Watson attests that "[b]eginning in March of 2025, ICE reviewed and terminated numerous SEVIS records" before instituting a "new policy," under which "ICE re-activated SEVIS records" and "*has no plans . . .* to re-terminate the plaintiff(s)

---

[7] Notably, Defendants changed their conduct after the entry of at least twenty-five temporary restraining orders from this Court and others. See, e.g., Gao v. Noem, No. 1:25-cv-419, 2025 WL 1171572 (W.D. Mich. Apr. 23, 2025); Shaik v. Noem, No. cv 25-1584 (JRT/DJF), 2025 WL 1170447 (D. Minn. Apr. 22, 2025); Mohammed H. v. Trump, No. cv 25-1576 (JWB/DTS), 2025 WL 1170448 (D. Minn. Apr. 22, 2025); Yang v. Noem, No. 25-cv-292-WMC, 2025 WL 1166521 (W.D. Wis. Apr. 22, 2025); Doe v. Noem, No. 3:25-cv-00023, 2025 WL 1161386 (W.D. Va. Apr. 21, 2025); Chen v. Noem, No. 1:25-cv-00733-TWP-MG, 2025 WL 1163653 (S.D. Ind. Apr. 21, 2025); Patel v. Bondi, No. 1:25-cv-00103-SPB-WSH, 2025 WL 1158708 (W.D. Pa. Apr. 21, 2025); Ariwoola v. Noem, No. 3:25-cv-03313-JDA, 2025 WL 1148491 (D.S.C. Apr. 18, 2025); Chen v. Noem, No. 25-cv-03292-SI, 2025 WL 1150697 (N.D. Cal. Apr. 18, 2025); Daou v. Noem, No. 8:25-cv-00976-MSS-AEP, 2025 WL 1148687 (M.D. Fla. Apr. 18, 2025); Oruganti v. Noem, No. 2:25-cv-00409-ALM-EPD, 2025 WL 1144560 (S.D. Ohio Apr. 18, 2025); Saxena v. Noem, No. 5:25-cv-05035-KES, 2025 WL 1149498 (D.S.D. Apr. 18, 2025); Doe v. Noem, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025); Doe v. Noem, No. 2:25-cv-00633-DGE, 2025 WL 1141279 (W.D. Wash. Apr. 17, 2025); Hinge v. Lyons, No. 25-01097-RBW, 2025 WL 1134966 (D.D.C. Apr. 15, 2025); Patel v. Bondi, No. 1:25-cv-00101-SPB-WSH, 2025 WL 1134875 (W.D. Pa. Apr. 17, 2025); Doe #2 v. Trump, No. 4:25-cv-00175-TUC-AMM, 2025 WL 1115468 (D. Ariz. Apr. 15, 2025); Isserdasani v. Noem, No. 3:25-cv-00283-wmc, 2025 WL 1118626 (W.D. Wis. Apr. 15, 2025); Roe v. Noem, No. 2:25-cv-00040-DLC, 2025 WL 1114694 (D. Mont. Apr. 15, 2025); Ratsantiboon v. Noem, No. 25-CV-01315 (JMB/JFD), 2025 WL 1118645 (D. Minn. Apr. 15, 2025); Doe #1 v. Noem, No. 3:25-CV-00042-RGE-WPK, 2025 WL 1203472 (S.D. Iowa Apr. 24, 2025); Mohd v. Dep't of Homeland Sec., No. 2:25-CV-2183 (NJC), ECF No. 5 (E.D.N.Y. Apr. 19, 2025); Doe No. 1 v. Noem, No. CV 25-1962, 2025 WL 1224783 (E.D. Pa. Apr. 28, 2025); Patel v. Lyons, No. 1:25-cv-01096-ACR, ECF No. 11 (D.D.C. Apr. 17, 2025); Liu v. Noem, 777 F. Supp. 3d 83 (D.N.H. 2025); Doe #1 v. Trump, 785 F. Supp. 3d 575 (D. Ariz. 2025); Ziliang J. v. Noem, No. 25-CV-1391 (PJS/DLM), 2025 WL 1358665 (D. Minn. Apr. 17, 2025), Student 1 v. Noem, No. CV 25-2871 (GC) (JTQ), at ECF No. 11 (D.N.J. Apr. 23, 2025)

12

SEVIS record *based solely on the NCIC record that led to its initial termination.*" Watson Decl. ¶¶ 4-7 (emphasis added). Defendants chose these words carefully. This language leaves open a plethora of other reasons they could offer to terminate Plaintiff's SEVIS status. See Shaik v. Noem, 801 F. Supp. 3d 825 (D. Minn. 2025) (finding that ICE left the door open for another round of terminations because "[t]he gaping hole in [the Declaration's] statement is obvious"); Doe No. 1 v. Noem, No. CV 25-1962, 2025 WL 1582460, at *6 (E.D. Pa. June 4, 2025) ("[T]he declaration from Defendants only reflects what Defendants *intend* to do under a *current, temporary* policy, with no concrete information on which to rely." (emphasis in original)); Mohd v. Dep't of Homeland Sec., No. 2:25-CV-2183 (NJC), 2025 WL 2112425, at *12 (E.D.N.Y. July 28, 2025) (noting that Watson's declaration "fails to assure the Court that ICE will not change its policy tomorrow, particularly in light of Defendants' failure to provide *any* information regarding what considerations factored into the decision to implement the policy which resulted in [plaintiff's] SEVIS record revocation in the first place." (emphasis in original)).

More so, this "new policy" mentioned is not a new policy at all. It is, instead, the same Broadcast Message "**FOR INTERNAL SEVP USE ONLY**" that explicitly disclaims Plaintiff's ability to rely on it or "to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter." See e.g., Saxena v. Noem, No. 5:25-cv-05035-KES, at ECF No. 18 (D.S.D. Apr. 30, 2025) (filing a notice that ICE "promulgated a new policy" with the same broadcast message that is explicitly "not a rule or final action by SEVP"). This

document has been struck from the record and is not considered to adjudicate the merits of this case. It is noted solely to show the alleged new policy the Defendants are purporting to follow. Without this document, Defendants provide nothing on the new policy other than Watson's statement indicating that it supposedly exists. Thus, the Court has no ability to determine if the Defendants have "consistently maintained [their] commitment to the new policy or legislative scheme," where there is no evidence of a new policy at all.

Accordingly, even considering the presumption for the Government when it voluntarily ceases conduct, Defendants have failed to provide any reliable assurance that ICE will not resume the same action.

Furthermore, Defendants' arguments that the voluntary cessation exception to mootness should not be applied are unavailing. Defendants first compare this case to Djadju v. Vega, 32 F.4th 1102 (11th Cir. 2022)[8] for the proposition that this case is moot. (Dkt. 34 at 5) Defendants omit that the holding was specific to the context of habeas relief because "a habeas petition presents a live case or controversy only when a petitioner is in custody." Djadju, 32 F.4th at 1106. Furthermore, in Djadju, the Government released the plaintiff from custody "under an order of supervision, following the procedures set forth in 8 C.F.R. § 241.4, *after* the district court denied his habeas petition, suggesting that there was no link between this lawsuit and its action." Id. at 1109. This is the exact opposite of what occurred here. Plaintiff's SEVIS status

---

[8] While this case is cited above for the Eleventh Circuit's black-letter law regarding the voluntary cessation doctrine, the facts are not comparable as asserted by the Defendants.

14

was reactivated after the Court Ordered the Government to do so. (Dkts. 7, 12) And not only did this Court Order the Government to do so, but courts around the country also did the same. See supra note 7.

Defendants also cite to Purpose Built Fams. Found., Inc. v. United States, 95 F.4th 1346 (11th Cir. 2024) [hereinafter Purpose Built] where the facts are, again, distinguishable. In Purpose Built, the plaintiff was a nonprofit for veterans that received grants from the Department of Veteran Affairs ("VA"). Id. at 1349. The challenged conduct occurred when the VA notified the plaintiff that it was to terminate plaintiff's grants within seven days. Id. at 1350. Yet, when the VA revoked the termination letters and ceased the challenged conduct, the VA gave the plaintiff "more process, invited a response, and then reconsidered and revised its findings in part." Id. at 1354. "And the [VA] specified at length the audit findings on which it based its ultimate decision." Id. at 1354. The conduct by the VA established that the "notices were 'permanent' and are now 'complete.'" Id. at 1354. This is not the case here.

Here, Defendants rely on the current cessation of their conduct and the Watson affidavit to allege that their decision is permanent and complete. As discussed above, this does not provide the Court with sufficient assurance. Rather, Defendants leave open the possibility for them to terminate Plaintiff's SEVIS status for any reason other than the specific NCIC record that led to the instant termination. Watson Decl. ¶ 6. Accordingly, the Court declines to find this case is moot.

15

### b. The termination of Plaintiff's SEVIS status was a final agency action subject to APA review.

This Court finds, like every other federal district court where the argument has been asserted that the termination of a SEVIS record is a final agency action. See Patel v. Lyons, No. 25-cv-01096 (ACR), 2026 WL 587640, at *5 n.9 (D.D.C. Feb. 27, 2026) (collecting cases); see also (Dkt. 7); (Dkt. 24 at 15-18) ("Plaintiff will most assuredly be able to establish that the termination of Plaintiff's SEVIS record was final agency action . . . the termination of Plaintiff's SEVIS record was a final agency action, and the Court may review the action for unlawfulness under the APA."). Defendants present no new argument from the one asserted in their Response in Opposition to Plaintiff's Motion for Preliminary Injunction. (Dkt. 15) The Defendants opted to refrain from changing a single word, except for the first sentence. Compare (Dkt. 15 at 10-12) with (Dkt. 34 at 12-14) The Court ruled against Defendants on this argument in April, and the Court will do so again today.

An agency action is final when it satisfies two conditions: (1) the action must "mark the consummation of the agency's decision-making process;" and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Bennett v. Spear, 520 U.S. 154, 177-78 (1997).

The termination of Plaintiff's SEVIS record marked the consummation of the agency decision-making process that certain noncitizen students' SEVIS records should be terminated. See id., at 178. There is no process outlined in a statute or a regulation by which Plaintiff could appeal the termination of his SEVIS status. See

16

Isserdasani v. Noem, No. 25-CV-283-WMC, 2025 WL 1330188, at *7 (W.D. Wis. May 7, 2025). Defendants conceded this fact at the preliminary injunction hearing.[9] Defendants nonetheless argued that Plaintiff would have access to review procedures if he lost his F-1 nonimmigrant status. (Dkt. 15 at 9–10) (citing 8 C.F.R. § 214.2(f)(16)) This argument is unavailing for two reasons.

First, Defendants conceded that Plaintiff's SEVIS status and his nonimmigrant status are different things, and the review procedures in 8 C.F.R. § 214.2(f)(16) relate to a student's ability to request the reinstatement their F-1 status, not their SEVIS status.[10] Defendants did not contend that the termination of Plaintiff's SEVIS status, alone, triggered a right to review procedures related to the loss of nonimmigrant status.

Second, and more importantly, the Code of Federal Regulations does not require a noncitizen student to request reinstatement of their nonimmigrant status before seeking judicial review of their loss of status. Jie Fang v. Dir. U.S. Immig. & Customs Enf't, 935 F.3d 172, 182 (3d Cir. 2019). Thus, a request for reinstatement is not a prerequisite to judicial review. Id. Moreover, § 214.2(f)(16)(i) grants United States Citizenship and Immigration Services ("USCIS") discretion to "consider

---

[9] The Court asked, "So there is no meaningful way to reinstate the SEVIS status, that's a permanent decision that has no recourse; is that right?" Defendants' counsel replied, "That's . . . my understanding, Your Honor. Should the change in SEVIS ultimately lead [to] removal proceedings then there would be due process given in the immigration Court in the removal proceeding."

[10] When Defendants' counsel began to present this argument to the Court, the Court asked, "But that's the F-1 status, that's not the SEVIS status; is that right?" Defendants' counsel replied, "That's my understanding, Your Honor." Defendants also appeared to concede this fact in their response, when they stated that "the review procedures available to Plaintiff (in the event the Plaintiff had actually lost his lawful nonimmigrant F-1 status) would allow him to seek reinstatement administratively from [USCIS]." (Dkt. 15 at 9) (emphasis added) With this language, Defendants distinguish Plaintiff's loss of SEVIS status, which indisputably occurred, from a loss of his F-1 status, which Defendants indicate did not "actually" occur.

granting" a student's request for reinstatement of his or her F-1 status. "If USCIS does not reinstate the student, the student may not appeal the decision." Id. at § 214.2(f)(16)(ii). Therefore, a student's right to request reinstatement, which USCIS may deny in its sole discretion, does not afford the student a procedure for the review of the student's loss of status. See Jie Fang, 935 F.3d at 184–85.

Based on the foregoing, the agency action here satisfies the first condition. As for the second condition, ICE's termination of a SEVIS status had a cascading effect. The action precluded USF from continuing to employ him as a graduate assistant. Plaintiff's graduate assistantship includes both a stipend and a tuition waiver, but he cannot maintain those financial benefits without working in his graduate assistant role. ICE's action rendered him ineligible for the financial aid that made his enrollment as an F-1 student possible to begin with. And although Ms. Taylor testified that USF permitted Plaintiff to continue to attend classes, the Court understood this testimony to mean that USF permitted Plaintiff to audit classes, not to attend classes for credit as an enrolled student. Thus, the termination of Plaintiff's SEVIS status immediately jeopardized Plaintiff's ability to maintain a full course of study, and therefore, his F-1 status.

Furthermore, at the time of the termination, Plaintiff was only months away from beginning to pursue a scholarship funded Ph.D. in Petroleum Engineering in the premier program at the University of Texas. To begin this Ph.D. program, Plaintiff was required to have a valid F-1 nonimmigrant status. The termination of Plaintiff's SEVIS status could have derailed his plan to matriculate into his Ph.D. program, and

18

without the reactivation of Plaintiff's SEVIS status, Plaintiff would not have been able to enroll as a student at the University of Texas. Now, any future termination could put Plaintiff's status as a student in jeopardy once again.

Moreover, even if USF had permitted Plaintiff to continue to work as a graduate assistant and to attend classes for credit, USF would not have been able to verify to DHS or ICE through SEVIS that Plaintiff was complying with the conditions of his F-1 visa. Without an active SEVIS status, Plaintiff could not prove that he is maintaining his F-1 nonimmigrant status as far as Defendants are concerned. Consequently, the termination of his SEVIS status would jeopardize Plaintiff's nonimmigrant status.

The series of circumstances resulting from the termination of Plaintiff's SEVIS status would cause Plaintiff to fail to maintain his F-1 status and render him deportable under 8 U.S.C. § 1227(a)(1)(C)(i).[11] SEVIS status termination also "obligates a student to depart from the country post haste." Patel, 2026 WL 587640, at *6 (citing 8 U.S.C. § 1184(a)(1); 8 C.F.R. § 214.2(f)(5)(iv)). Thus, the termination of his SEVIS record had obvious legal and substantive consequences. The second condition is satisfied. Based on the foregoing, the termination of Plaintiff's SEVIS record was a final agency action, and the Court may review the action for unlawfulness under the APA.

---

[11] "Any alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 1258 of this title, or to comply with the conditions of any such status, is deportable." 8 U.S.C. § 1227(a)(1)(C)(i).

### c. The agency action was arbitrary or capricious.

The APA permits any person adversely affected by an agency's action to obtain judicial review of that action in federal court. 5 U.S.C. § 702. When reviewing agency action, the court is directed to "hold unlawful and set aside" an action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5. U.S.C. § 706(2)(A).

> Agency action is considered arbitrary or capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 911 (11th Cir. 2007) (citing Motor Vehicle Mfrs. Ass'n of the U.S., Inc., 463 U.S. at 43). "The agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'n of the U.S., Inc., 463 U.S. at 43 (citing Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).

A review of the Administrative Record and the governing requirements for maintaining SEVIS status leads to a clear conclusion; the agency action was a violation of the APA. Requirements for maintaining SEVIS status are set forth in 8 C.F.R. § 214.1. This regulation sets forth three reasons where nonimmigrant status is required to be terminated. Id. at § 214.1(d). It also sets forth what constitutes a "failure to maintain nonimmigrant status" and thus be subject to deportation under 8 U.S.C.

§ 1227(a)(1)(C)(i) or 8 U.S.C. § 1231. Id. at §§ 214.1(e)-(g). One failure to maintain nonimmigrant status is a "conviction" of a "crime of violence" where a sentence of more than one year may be imposed. 8 C.F.R. § 214.1(g).

Plaintiff's SEVIS status was terminated after agency officials ran the names of foreign students through the National Crime Information Center ("NCIC") and received "positive NCIC hits for 850+" students. (Dkt. 33-3) The Department of State ("DOS") and ICE created a spreadsheet with the 850+ positive NCIC hits in their "daily working group collaboration meeting" in furtherance of their "Student Criminal Alien Initiative." (Id.) This spreadsheet was sent the morning of Saturday, April 5 to Shane Myers of DOS. (Id.) The following Monday morning, an unnamed, unspecified DOS individual sent the spreadsheet to unnamed, unspecified Homeland Security Investigation, Department of Homeland Security ("HSI DHS") individuals requesting DHS terminate 323 students' SEVIS status and inquired how to prioritize revocation of another 401 students' SEVIS status. (Dkt. 33-5) Eleven minutes later, an unnamed HSI DHS individual requested SEVIS status termination for all students on the spreadsheet, with no reason or analysis. (Id.) The next day, at 2:10 PM an unnamed HSI DHS individual indicated "Request Hotel is completed," and included a summary of terminated SEVIS statuses. (Id.) The record includes no information or basis for the terminations, other than the positive NCIC hits. (Dkts. 33-3, 33-5) Even after inquiry from the Court, no reasoned explanation could be provided.

On the same day, April 8, 2025, Plaintiff was informed that his SEVIS status was terminated for the reason "Other," and because he was "identified in criminal

21

records check and/or has had their VISA revoked." (Dkt. 35-1 at 9) The "HOTEL"[12] spreadsheet that the terminations stemmed from indicates Plaintiff had a record of arrest for stalking in 2024. (Dkt. 33-4 at 29) It also indicates, however, that Plaintiff was never charged with stalking and that he was never convicted. (Id.) Defendants do not dispute this. More so, the day before Plaintiff's SEVIS status was terminated, the arrest was expunged. (Dkt. 35-17) The expunged arrest clearly does not fall within the ambit of a conviction of a crime of violence, and this arrest is the only basis Defendants assert for termination of Plaintiff's SEVIS status. As such, Defendants' action violated the APA because they did not "articulate a satisfactory explanation for [their] action including a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'n of the U.S., Inc., 463 U.S. at 43. The action also violated the APA because the action is outside the bounds of what Congress intended for DHS to consider. See 8 C.F.R. § 214.1.

Defendants continue to assert that the termination was proper because the DHS website says it can terminate SEVIS statuses for "nine additional reasons" including "other." (Dkt. 34 at 18) (citing Sevis HELP HUB, Study in the States, Dep't. of Homeland Sec., https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (last visited March 6, 2026)). The DHS website is not an authority to determine whether termination of a SEVIS status is proper. It cannot promulgate a catch-all provision of "other" to permit

---

[12] The Court, again, notes the meaning of HOTEL is unknown. See supra note 5.

any action for any reason it chooses. "Agency action is considered arbitrary or capricious if the agency has relied on factors which Congress has not intended it to consider." <u>Sierra Club, Inc.</u>, 488 F.3d at 911. The action here, if sought to be justified under a non-specific, catch-all "other" provision, is arbitrary or capricious and "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C). Accordingly, Plaintiff is entitled to summary judgment.[13]

## IV.   CONCLUSION

Accordingly, it is hereby **ORDERED**:

1. Defendants' Motion for Summary Judgment, (Dkt. 34), is **DENIED.**

2. Plaintiff's Motion for Summary Judgment, (Dkt. 35), is **GRANTED to the extent set forth herein.**

3. Defendants Kristi Noem, in her official capacity as Secretary, U.S. Department of Homeland Security, and Todd Lyons, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement, are permanently enjoined as follows:

   a. Defendants shall not terminate Plaintiff's nonimmigrant status or Plaintiff's SEVIS status or record absent a valid ground as set forth in 8 C.F.R. § 214.1 or other lawfully enacted regulation;

   b. Defendants are prohibited from initiating, commencing, conducting, or executing any removal proceedings based upon the

---

[13] Finding the agency action was unlawful and must be set aside under the APA, the Court does not reach the Due Process claims asserted by Plaintiff.

previous termination of Plaintiff's SEVIS record in violation of the permanent injunctive relief.

4. Plaintiff is permitted to file a motion seeking reasonable costs and attorneys' fees incurred in this action in accordance with the Equal Access to Justice Act ("EAJA"). Plaintiff may file a motion within 30 days of the entry of this Order, including the amount sought and an itemized statement from his attorney stating the actual time expended and the rate at which fees and other expenses were computed. See 28 U.S.C. § 2412(d)(1)(B).

5. The Clerk is **DIRECTED** to enter Judgment in favor of Plaintiff.

**DONE** and **ORDERED** in Tampa, Florida on this 24th day of March 2026.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies to:**
Counsel of record